

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 1 9 2019
CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on Dec 19 2019

Susan L. Carlson
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

THE ASSOCIATED PRESS, NORTHWEST )
NEWS NETWORK, KING-TV ("KING 5"), )
KIRO 7, ALLIED DAILY NEWSPAPERS )
OF WASHINGTON, THE SPOKESMAN- )
REVIEW, WASHINGTON NEWSPAPER )
PUBLISHERS ASSOCIATION, SOUND )
PUBLISHING, INC., TACOMA NEWS, )
INC. ("THE NEWS TRIBUNE"), and THE )
SEATTLE TIMES, )
                                               )
    Respondents/Cross-Petitioners, )
                                               )
    v.                                           )
                                               )
THE WASHINGTON STATE )
LEGISLATURE; THE WASHINGTON )
STATE SENATE; THE WASHINGTON )
STATE HOUSE OF REPRESENTATIVES, )
Washington state agencies; and SENATE )
MAJORITY LEADER MARK SCHOESLER,)
HOUSE SPEAKER FRANK CHOPP, )
SENATE MINORITY LEADER SHARON )
NELSON, and HOUSE MINORITY )
LEADER DAN KRISTIANSEN, each in )
their official capacity, )
                                               )
    Petitioners/Cross-Respondents. )

No. 95441-1

En Banc

Filed   DEC 1 9 2019

OWENS, J. — This case asks us to determine whether the state legislative branch is subject to the general public records disclosure mandate of the Public Records Act (PRA), ch. 42.56 RCW. To resolve this question, we must decide whether each of the two classes of legislative entities constitute "agencies" for purposes of the PRA: the offices of individual legislators on the one hand and the institutional bodies of the senate, house of representatives, and legislature as a whole on the other. We hold that under the plain meaning of the PRA, individual legislators are "agencies" subject in full to the PRA's general public records disclosure mandate because they are expressly included in the definitional chain of "agency" in a closely related statute. We further hold that the institutional legislative bodies are not "agencies" because they are not included in that definitional chain, but they are instead subject to the PRA's narrower public records disclosure mandate by and through each chambers' respective administrative officer. Accordingly, we affirm the trial court.

## FACTS

The parties agree that there are no material facts in dispute. Between January 25 and July 26, 2017, members of the news media submitted 163 PRA requests to the state senate, the house of representatives, and the legislature as a whole, as well as the offices of individual state senators and representatives. Senate and house counsel responded to the news media's PRA requests on behalf of the chambers' chief administrative officers, the secretary of the senate (Secretary) and the chief clerk of the house of representatives

(Clerk). In response to some requests, senate and house counsel stated that the legislature did not possess responsive records in light of the definition of "public records" applicable to the legislature. In response to other requests, senate and house counsel and certain individual legislators voluntarily provided limited records. Some records that were provided contained redactions, though no exemptions were identified.

Members of the news media were not satisfied with the legislative entities' responses. On July 26, members of the news media collectively submitted, via counsel, identical PRA requests to the senate, the house, and all individual legislators. The July 26 requests stated that if the recipients failed to adequately respond, the news media would "be forced to file a lawsuit addressing the PRA violations." Clerk's Papers (CP) at 43, 48, 54, 59. House counsel again responded in a limited capacity, citing the "specific definition of 'public records' [that] applies to the Legislature." CP at 31.

On September 12, a coalition of news media outlets (collectively News Media Plaintiffs) filed a complaint against the institutional legislative bodies and four individual legislative leaders in their official capacities (collectively Legislative Defendants). The News Media Plaintiffs alleged that the Legislative Defendants violated the PRA by withholding public records. The Legislative Defendants refuted the allegations, arguing that the PRA sets out a narrower public records disclosure mandate specific to the legislative branch, which it argued exempts both its institutional bodies and individual legislators' offices from the PRA's general public disclosure mandate binding on "agencies." In November, the parties filed cross motions for summary

3

judgment. The trial court requested that the state attorney general (AG) file an amicus brief offering its analysis of the issue. The AG amicus brief proffered that individual legislators' offices are "agencies" subject to the PRA's general public records disclosure mandate, while the institutional legislative bodies are not.

On January 19, 2018, the trial court granted in part and denied in part each party's motion for summary judgment, ruling in line with the AG's analysis. The Legislative Defendants petitioned this court for direct discretionary review and filed a motion to stay the order; the News Media Plaintiffs filed a cross motion for direct discretionary review. The trial court granted a joint motion to certify questions of law to this court. Our Commissioner granted first the stay and later the motions for direct discretionary review.

## ISSUES

I.      Are individual legislators' offices "agencies" for purposes of the PRA and therefore subject to the PRA's general public records disclosure mandate?

II.     Are institutional legislative bodies "agencies" for purposes of the PRA and therefore subject to the PRA's general public records disclosure mandate?

## ANALYSIS

We review de novo questions of statutory interpretation and challenges to agency actions under the PRA. RCW 42.56.550(3); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009). We also review de novo summary judgment orders, undertaking the same inquiry as the trial court and viewing all facts and

4

reasonable inferences in the light most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Under rules of statutory interpretation, we must "ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. Plain "meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). Only if the statute remains ambiguous—that is, "susceptible to more than one reasonable meaning"—is it appropriate to resort to legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

"The PRA is 'a strongly worded mandate for broad disclosure of public records.'" *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 408, 259 P.3d 190 (2011) (plurality opinion) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). The PRA's general public records disclosure mandate requires that "[e]ach *agency* . . . shall make available for public inspection and copying all public records." RCW 42.56.070(1) (emphasis added). The PRA

5

defines "agency" as including "all state agencies." RCW 42.56.010(1). The PRA

defines "state agency" in turn as including "every state office, department, division,

bureau, board, commission, or other state agency." *Id.* The PRA does not expressly

define "state office" or the other terms enumerated in the definition of "state agency."

Neither does the PRA expressly indicate whether individual legislators or the senate,

the house, and the legislature as a whole are "agencies" for purposes of the PRA.

Notably, the PRA provides an exception to the general public records

disclosure mandate for the Secretary and the Clerk. While the PRA defines "public

record" as "any writing containing information relating to the conduct of

government," a narrower definition applies to the Secretary and the Clerk:

> For the office of the secretary of the senate and the office of the chief clerk of the house of representatives, public records means legislative records as defined in RCW 40.14.100 and also means the following: All budget and financial records; personnel leave, travel, and payroll records; records of legislative sessions; reports submitted to the legislature; and any other record designated a public record by an official action of the senate or the house of representatives.

RCW 42.56.010(3). Additionally, the PRA distinguishes the Secretary and the Clerk

from "agencies" by repeatedly referring to an "agency, the office of the secretary of

the senate, or the office of the chief clerk of the house of representatives." RCW

42.56.070(8), .100, .120; *see Whatcom County*, 128 Wn.2d at 546. In effect, the PRA

establishes a narrower public records disclosure mandate for the Secretary and the

Clerk.

Though the PRA sets out a narrower mandate for the Secretary and the Clerk, it does not expressly indicate whether that mandate encompasses records generated by individual legislators' offices and/or the institutional legislative bodies. However, the Secretary and the Clerk serve as the chief administrative officers for their respective chambers, responsible for classifying, arranging, maintaining, and preserving legislative records. RCW 40.14.130; *see also* RCW 40.14.140 ("It shall be the duty of the clerk and the secretary to advise the party caucuses in each house concerning the necessity to keep public records."). Because the offices of the Secretary and the Clerk exist to support the legislature's administrative functions, their narrower public records disclosure mandate clearly attaches to legislative entities in some capacity.

The issues before us thus boil down to which legislative entities are subject only to the narrower public records disclosure mandate by and through the Secretary and the Clerk, and which, if any, legislative entities are "agencies" subject to the PRA's general public records disclosure mandate. For purposes of this analysis, we consider each of the two classes of legislative entities in turn: individual legislators' offices on the one hand and the institutional legislative bodies on the other.

I.    *Individual Legislators' Offices*

Individual legislators' offices are plainly "agencies" for purposes of the PRA in light of a closely related statute, former RCW 42.17A.005 (2011). Former RCW 42.17A.005 is the definitions section of the campaign disclosure and contribution law (CDC), ch. 42.17A RCW. The laws that are today the CDC and the PRA were

7

enacted via initiative as a single law, the Public Disclosure Act. LAWS OF 1973, ch. 1 (Initiative 276, approved Nov. 7, 1972). For 35 years, these twin pillars of open government law were codified together within an omnibus chapter, former ch. 42.17 RCW (2002). *See* LAWS OF 2005, ch. 274, §§ 101-103. The CDC and the PRA thus exemplify "related statutes." *Campbell & Gwinn*, 146 Wn.2d at 11.

The CDC and the PRA continue to share identical definitions of "agency" and "state agency": "'Agency' includes all state agencies . . . . 'State agency' includes every state office." Former RCW 42.17A.005(2); RCW 42.56.010(1). Significantly, the CDC goes on to expressly define "state office" as including "state legislative office," and "legislative office" as including "the office of a member of the state house of representatives or the office of a member of the state senate." Former RCW 42.17A.005(44), (29). Thus, the offices of individual legislators are unequivocally "agencies" under the CDC. Given that former RCW 42.17A.005 is closely related and "disclose[s] legislative intent about the provision in question," *Campbell & Gwinn*, 146 Wn.2d at 11, we conclude that individual legislators' offices are plainly and unambiguously "agencies" for purposes of the PRA as well.

Legislative history, though unnecessary to discern the plain meaning of the statute, nonetheless supports our conclusion. To begin with, both the campaign finance reporting provisions that became the CDC and the public records disclosure provisions that became the PRA were codified together within the omnibus chapter when the definitions of "state office" and "state legislative office" were added to the

definitional chain of "agency" in 1995. *See* LAWS OF 1995, ch. 397, § 1. Those provisions remained codified together for 10 years thereafter. *See* LAWS OF 2005, ch. 274. During that time, the definition of "agency" as expressly including individual legislators' offices applied with equal force to all provisions in the omnibus chapter. *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001) ("Legislative definitions provided by the statute are controlling.").

In 2005, the legislature recodified the public records disclosure provisions into a separate chapter, the PRA. LAWS OF 2005, ch. 274, §§ 101-103. Rather than establishing independent definitions for the newly minted PRA, however, the legislature incorporated by reference the definitions of the omnibus chapter. LAWS OF 2005, ch. 274, § 101 ("The definitions in RCW 42.17.020 apply throughout this chapter."). Thus, even after the PRA was separated into its own chapter, the operative definition of "agency" expressly continued to include individual legislators' offices.

Not until 2007 did the legislature amend the PRA to add a definitions section, eliminating the incorporation by reference of the omnibus chapter's definitions. LAWS OF 2007, ch. 197, § 1. The 2007 amendment imported word for word into the PRA the omnibus chapter's definition of "agency," which remains unaltered; the rest of the definitional chain was not imported. *See id.*; RCW 42.56.010.[1]

---

[1] In 2010, the legislature amended the PRA and the CDC in the same session law, recodifying the CDC into its own chapter, ch. 42.17A RCW, distinct from the omnibus chapter, which is now defunct. LAWS OF 2010, ch. 204, § 1102.

The Legislative Defendants argue that the 2005 and 2007 amendments divested individual legislators' offices of the PRA's general public records disclosure mandate. In their view, the amendments "signal purposeful changes" and a "deliberate exclusion" of legislative offices from the PRA's definition of "agency." Wash. State Legislature's Opening Br. at 22. They characterize the 2005 amendment as a "substantive step to distinguish the PRA from" the CDC and argue that the 2007 amendment "'cannot be viewed as accidental.'" *Id.* at 22, 25 (quoting *Jametsky v. Olsen*, 179 Wn.2d 756, 766, 317 P.3d 1003 (2014)).

Because the meaning of "agency" as pertains to individual legislators' offices is plain, the Legislative Defendants' reliance on legislative history is premature, even if it supported their claim, which it does not. The 2005 amendment was not intended to effect any substantive change, much less a change as dramatic as the exemption of all individual legislators from the PRA's general public records disclosure mandate. House bill reports were clear that the 2005 recodification of the PRA effected "no substantive change." H.B. REP. ON SUBSTITUTE H.B. 1133, at 2-3, 59th Leg., Reg. Sess. (Wash. 2005). "No exemptions [we]re modified, deleted, or added." FINAL B. REP. ON SUBSTITUTE H.B. 1133, at 2, 59th Leg., Reg. Sess. (Wash. 2005).

The exemption of any government entity from the PRA's general public records disclosure mandate constitutes a major political action, one that cannot be achieved through mere attrition, as the Legislative Defendants in effect posit. *See Bainbridge Island Police Guild*, 172 Wn.2d at 408; *Freedom Found. v. Gregoire*, 178

10

Wn.2d 686, 695, 310 P.3d 1252 (2013) ("To preserve the PRA's broad mandate for disclosure, [we] construe[] its provisions liberally and its exemptions narrowly."). The PRA specifically included individual legislators' offices in the definitional chain of "agency" before and after the PRA was separated into its own chapter. Neither the 2005 nor 2007 amendments broke that chain. Without more—such as notice to the electorate that legislators were attempting to exempt themselves from the PRA— neither amendment was sufficient to accomplish that feat.

The Legislative Defendants also argue that the 2007 amendment "ended this inter-chapter 'borrowing'" of definitions, which this court should "not reinstate." Wash. State Legislature's Opening Br. at 25. However, this case is distinguishable from past cases where we have rejected "borrowing" the definition of a term from one statute to interpret the same term in a different statute. In *State v. Barnes*, 189 Wn.2d 492, 496-97, 403 P.3d 72 (2017), we declined to borrow the definition of "motor vehicle" from a transportation statute to interpret the same term in a criminal statute. In *Davis v. Department of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999), we declined to borrow the definition of "juvenile" from a juvenile justice statute to interpret the same term in a controlled substances statute.

Unlike the unrelated pairs of statutes rejected for definitional cross-reference in *Barnes* and *Davis*, here the PRA and the CDC are profoundly related. For more than three decades, the PRA and the CDC were one law. Until 2007, they shared common definitions. Today they remain housed within the same title and their definitions of

11

"agency" remain identical. Though the legislature ended the PRA's express incorporation of the omnibus chapter's definitions in 2007, rules of statutory interpretation direct us to consider related statutes for purposes of discerning the plain meaning of a provision. *Campbell & Gwinn*, 146 Wn.2d at 11. This case is like *Washington Public Ports Ass'n v. Department of Revenue*, 148 Wn.2d 637, 647-48, 62 P.3d 462 (2003), in which a retail sales tax statute "clarif[ied] the plain meaning" of a "closely related" leasehold excise tax statute housed within the same title. Here, the CDC is closely related and clarifies the PRA's plain meaning of "agency."

Finally, the Legislative Defendants argue that by its ordinary meaning, the term "agency" cannot encompass legislators. They point out that the legislature is a branch of government, while an "agency" commonly refers to administrative entities created by the legislature. However, reference to ordinary meaning here is misplaced because "[o]nly where a term is undefined will it be given its plain and ordinary meaning." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005).

In the context of the PRA, the term "agency" expressly serves as a placeholder for an expansive array of state and local political entities: "every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission," or other state or local agency. RCW 42.56.010(1). Many of these entities fall outside the scope of administrative "agencies" as the term is commonly understood. Nonetheless, all of these and more are "agencies" for purposes of the PRA.

For example, the CDC and the former omnibus chapter define "state office" as including "the office of governor, lieutenant governor, secretary of state, attorney general, commissioner of public lands, insurance commissioner, superintendent of public instruction, state auditor, or state treasurer," in addition to state legislative offices. Former RCW 42.17A.005(44); LAWS OF 1995, ch. 397, § 1. In *Freedom Foundation*, we held that the governor's office enjoys an executive communications privilege but is otherwise subject to the PRA's general public records disclosure mandate. 178 Wn.2d. at 697. If, as the Legislative Defendants argue, individual legislators' offices were not "agencies" subject to the PRA's general public records disclosure mandate, then ostensibly neither would be the governor's office or the eight other executive branch entities enumerated in the CDC's definitional chain of "agency" because, like legislative offices, they are not expressly included in the PRA's definition of "agency." Such an interpretation of the PRA would be untenable given long-standing practice regarding the PRA's applicability to executive branch offices. *See, e.g., State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990) (stating that unlikely, absurd, or strained interpretations must be avoided).

In sum, we conclude that under the plain meaning of the PRA, individual legislators' offices are "agencies" subject to the PRA's general public records disclosure mandate. Legislative history confirms rather than contradicts our conclusion. Accordingly, we hold that the News Media Plaintiffs are entitled to judgment as a matter of law on this issue.

II.    *Institutional Legislative Bodies*

Institutional legislative bodies, on the other hand, are not "agencies" for purposes of the PRA in light of closely related former RCW 42.17A.005 and relevant legislative history. Instead, we conclude that institutional legislative bodies are subject to the narrower public records disclosure mandate via the Secretary and the Clerk.

Unlike individual legislators' offices, the senate, the house, and the legislature are not included in the definitional chain of "agency" memorialized in the closely related CDC. *See* former RCW 42.17A.005(2), (29), (44). This fact alone distinguishes institutional legislative bodies from entities such as the offices of individual legislators and the governor, which are "agencies" subject to the PRA's general public records disclosure mandate. *See Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969) (defining the principle of expressio unius est exclusio alterius).

The News Media Plaintiffs argue that institutional legislative bodies should be considered "agencies" for purposes of the PRA in light of the chapter governing ethics in public service, ch. 42.52 RCW. RCW 42.52.010(1) defines "agency" as including "the state legislature." However, in contrast to the CDC, chapter 42.52 is not closely related to the PRA for purposes of disclosing legislative intent about the meaning of "agency." Whereas the PRA and the CDC were enacted as a single initiative and codified together in an omnibus chapter for 35 years, chapter 42.52 was enacted

14

independently in 1994 and codified separately from the omnibus chapter. LAWS OF 1994, ch. 154. The fact that chapter 42.52 is housed in the same title as the PRA does not alone render it related, nor does it justify replacing the PRA's definition of "agency" with RCW 42.52.010(1). "Legislative definitions generally control in construing the statutes in which they appear, but when the same word or phrase is used elsewhere the meaning depends on common usage and the context in which it is used, unaffected by the other statutory definitions." *Childers v. Childers*, 89 Wn.2d 592, 598, 575 P.2d 201 (1978). Rather, RCW 42.52.010(1) demonstrates that the legislature knew how to include its institutional bodies in a statutory definition of "agency" and chose not to do so in the PRA or the CDC. We thus conclude that institutional legislative bodies are plainly not "agencies" for purposes of the PRA.

Legislative history again supports our conclusion. Unlike individual legislators' offices, the senate, the house, and the legislature were never included in the definitional chain of "agency" set out in the omnibus chapter, indicating that the institutional bodies are not subject to the PRA's general public records disclosure mandate. *See* former RCW 42.17.020(1), (39) (1995); LAWS OF 1995, ch. 397, § 1.

Notably, though, the legislature did account for the public records disclosure duties of its institutional bodies in the same session law that it expressly recognized individual legislators' offices in the definitional chain of "agency." The 1995 amendment of the omnibus statute established the narrower public records disclosure mandate incumbent on the Secretary and the Clerk as well as the definitions for "state

15

office" and "state legislative office." LAWS OF 1995, ch. 397, § 1(39), (38). If the legislature had intended to include its institutional bodies in the definitional chain of agency, it readily could have done so then. Instead, the 1995 amendment set out a narrower scope of public records for each chambers' chief administrative officer. The senate bill report stated that the "[p]ublic disclosure statutes are amended to specifically address access to and production of public records in the possession of the Senate and the House of Representatives." FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5684, at 2, 54th Leg., Reg. Sess. (Wash. 1995). The report's use of the plural "statutes" suggests that it was describing the new, narrower mandate as well as the addition of definitions delineating individual legislators' offices as "agencies." *Id.*

Indeed, it makes sense that the legislature would delegate its institutions' public records disclosure duties to the Secretary and the Clerk because those offices are charged by law with classifying, arranging, maintaining, and preserving records generated by the senate and the house, respectively. RCW 40.14.130. What's more, the "public records" that the Secretary and the Clerk must disclose upon request are "legislative records" that are institutional in nature: they include "records of legislative sessions; reports submitted to the legislature; and any other record designated a public record by an official action of the senate or the house of representatives." RCW 42.56.010(3).

We therefore conclude that the narrower public records disclosure mandate incumbent on the Secretary and the Clerk inures to the institutional legislative bodies and comprises the extent of their PRA obligations. Though the legislative institutions are not expressly accounted for in the PRA, the CDC, or the omnibus chapter, interpreting that statutory silence as exempting them from any public records disclosure duties whatsoever would be absurd. *See Fjermestad*, 114 Wn.2d at 835. Instead, we find that the senate, the house, and the legislature as a whole are subject to the PRA through the Secretary and the Clerk, who fulfill the institutions' public records disclosure duties as chief administrative officers for their respective chambers.

Finally, the News Media Plaintiffs contend that if any class of legislative entities are not "agencies" subject to the PRA's general public records disclosure mandate, "the public will not have a means to obtain those records and such records will fall, in effect, into an inaccessible black hole." Opening Br. of Associated Press et al. at 7. That argument rests fundamentally on public policy, which is the purview of the legislature and should not inform interpretation of the statute. We "should resist the temptation to rewrite an unambiguous statute to suit our notions of what is good public policy, recognizing the principle that 'the drafting of a statute is a legislative, not a judicial function.'" *State v. Jackson*, 137 Wn.2d 712, 725, 976 P.2d 1229 (1999) (quoting *State v. Enloe*, 47 Wn. App. 165, 170, 734 P.2d 520 (1987)).

Even so, the specter of a "black hole" of legislative public records is overblown. The standard governing whether an entity must disclose a public record is

17

whether the record requested is "prepared, owned, used, or retained" by that entity, not simply whether that entity possesses the record at the time of the request. RCW 42.56.010(3). Furthermore, the fact that the public cannot obtain all possible records is not unique to legislative entities but is, instead, a reality inherent to the PRA. Under numerous statutes, various categories of records are exempt from public inspection. *E.g.*, RCW 42.56.210(1) (exempting records "which would violate personal privacy or vital governmental interests"); RCW 70.47.150 (exempting records regarding individuals' medical treatment); RCW 41.06.160 (exempting records regarding salary and fringe benefits rates). As "agencies" subject to the PRA's general mandate, individual legislators' offices are obliged to disclose upon request all public records not otherwise exempted from public inspection. Thus, all conceivable categories of nonexempt legislative records are obtainable either from the institutional legislative bodies via the Secretary or the Clerk, or from individual legislators' offices.

In sum, we conclude that under the plain meaning of the PRA, institutional legislative bodies are not "agencies" but are instead subject to the narrower public records disclosure mandate by and through the Secretary and the Clerk. Legislative history bolsters that interpretation because the senate, the house, and the legislature have never been included in the definitional chain of "agency" for purposes of the PRA. Accordingly, we hold that the Legislative Defendants are entitled to judgment as a matter of law on this issue.

## CONCLUSION

We hold that under the plain meaning of the PRA, individual legislators' offices are "agencies" subject to the PRA's general public records disclosure mandate because they are included in the definitional chain of "agency," as illuminated by the closely related former RCW 42.17A.005. We further hold that the senate, the house, and the legislature are not "agencies" because the institutional legislative bodies are not included in the definitional chain of "agency," nor were they at any point. Accordingly, we affirm the trial court and remand for further proceedings.

WE CONCUR:

Fairhurst C.J.

Madsen. J.

No. 95441-1

STEPHENS, J. (concurring in part/dissenting in part)—In passing Initiative

276, the people of Washington intended the mandate of public disclosure to govern

the legislature—including the house and senate, as well as individual legislators and

their respective offices.  The question before us is whether the legislature has since

narrowed the people's mandate through a series of amendments to the former public

disclosure act (PDA), ch. 42.17 RCW, now recodified as the Public Records Act

(PRA), ch. 42.56 RCW.  The legislature contends its amendments show a plain intent

to remove itself from the general disclosure requirements applicable to "*all* state

agencies" under the PRA.  RCW 42.56.010(1) (emphasis added).  It specifically

claims it no longer meets the definition of "agency."  Because I would hold the

legislature remains an "agency" subject to the PRA, I respectfully dissent.

ANALYSIS

A. Background and Principles of Interpretation

In 1972, Washingtonians enacted the PDA by initiative. LAWS OF 1973, ch. 1 (Initiative 276, approved Nov. 7, 1972); *see also Fritz v. Gorton*, 83 Wn.2d 275, 284, 517 P.2d 911 (1974) (plurality opinion) (noting "the electorate adopted Initiative 276 . . . by a substantial majority of the votes cast"). "An exercise of the initiative power is an exercise of the reserved power of the people to legislate." *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 204, 11 P.3d 762, 27 P.3d 608 (2000). "In approving an initiative measure, the people exercise the same power of sovereignty as the Legislature does when enacting a statute." *Id.* And, today, "[t]he Washington public [records] act [remains] a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978); *Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 512, 387 P.3d 690 (2017). The statute states:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created.

RCW 42.56.030. Thus, we must construe the PRA liberally—and its exemptions narrowly—to promote this public policy and to ensure that the public interest will

be fully protected. *Id.* In reviewing the PRA, we must "take into account the policy . . . that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

"'[I]n determining the meaning of a statute enacted through the initiative process, the court's purpose is to ascertain the collective intent of the voters who, acting in their legislative capacity, enacted the measure.'" *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 210, 189 P.3d 139 (2008) (quoting *Amalg. Transit*, 142 Wn.2d at 205). We read an initiative in light of its various provisions, rather than in a piecemeal approach, in relation to the surrounding statutory scheme, and we strive to give effect to all the language in the statute. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008). "Where the voters' intent is clearly expressed in the statute, the court is not required to look further." *Amalg. Transit*, 142 Wn.2d at 205. Thus, "[w]here the language of an initiative enactment is 'plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation [or construction].'" *Id.* at 205 (quoting *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996)).

When necessary to interpret an initiative's meaning, we read the language of the enactment "'as the average informed lay voter would read it.'" *Am. Legion*, 164 Wn.2d at 585 (internal quotation marks omitted) (quoting *State v. Brown*, 139 Wn.2d 20, 28, 983 P.2d 608 (1999)). And the "[r]ules of statutory construction apply." *Amalg. Transit*, 142 Wn.2d at 205. So, if there is ambiguity in the enactment, we may examine the statements in the voters' pamphlet to determine the voters' intent or we may resort to extrinsic aids, such as legislative history, later amendments, or canons of construction, to determine the legislature's intent. *See id.* at 205-06. Finally, we will not substitute our judgment for that of the electorate unless the initiative violates state or federal constitutional provisions. *Id.* at 206.

B.  The Average Informed Lay Voter Intended the Legislature To Be Subject to the PDA

We must first determine what the people of Washington originally intended when they passed the PDA in Initiative 276. Although policy declarations have no "operative force in and of themselves, [they] serve as an important guide in determining the intended effect of the operative sections." *Hearst*, 90 Wn.2d at 128.

The people described the public policy underlying the PDA with reference to all levels of government. LAWS OF 1973, ch. 1, § 1(2), (5), (6), (11). For example, the people made clear that "full access to information concerning the conduct of

government *on every level* must be assured as a fundamental and necessary precondition to the sound governance of a free society." *Id.* § 1(11) (emphasis added).

The people defined "agency," as it remains today, to "include[] all state agencies and all local agencies." *Id.* § 2(1). And they defined "state agency" to "include[] every state office, public official, department, division, bureau, board, commission or other state agency." *Id.* They did not otherwise define any of the terms in the definition of "state agency." *See generally id.* The *Nast* court aptly observed, "These are very broad definitions." *Nast v. Michels*, 107 Wn.2d 300, 305, 306-07, 730 P.2d 54 (1986) (noting that these definitions could be reasonably interpreted to include court case files but holding that the PDA does not apply to court case files because (1) the common law provides access, (2) the PDA does not specifically include courts or court case files within its definitions, and (3) such an interpretation would undo all the developed law protecting privacy and governmental interests); *see also City of Federal Way v. Koenig*, 167 Wn.2d 341, 349, 217 P.3d 1172 (2009) (Korsmo, J. Pro Tem., concurring) ("The[se] broad definition[s] brook[] no exceptions.").

Besides the obvious breadth of the definitions of agency, the use of the word "include" generally "signal[s] that the list that follows is meant to be illustrative

rather than exhaustive." *Samantar v. Yousuf*, 560 U.S. 305, 317, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010) (citing 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.7, at 305 (7th ed. 2007) ("'The word "includes" is usually a term of enlargement, and not of limitation.'" (quoting *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968)))); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012) ("The verb *to include* introduces examples, not an exhaustive list." (boldface omitted)).[1] Finally, the catchall phrase "or other state agency" further signals that the people intended the list to be nonexhaustive.

The PDA as originally drafted plainly includes individual legislators; they are "public officials" and their respective offices are "state offices." The harder question is whether the definition of "state agency" incorporates the legislature as an institution, including the house and the senate. The statute does not expressly reference the legislature or either bicameral body. It does not list the coordinate "branches" of government, for instance. Still, on the other hand, it does not exempt the coordinate "branches" of government from its nonexhaustive list. The legislative

---

[1] "In normal English usage, if a group 'consists of' or 'comprises' 300 lawyers, it contains precisely that number. If it 'includes' 300 lawyers, there may well be thousands of other members from all walks of life as well. That is, the word *include* does not ordinarily introduce an exhaustive list." SCALIA & GARNER, *supra*, at 132.

"branch" could reasonably fit into the "other state agency" category. The legislature could reasonably be interpreted to be a "division" of government, depending on the particular dictionary one uses and the particular definition one selects. Absent a plain exemption of the legislature from the definition of "state agency," its reach is ambiguous at most. This is not alarming, as ambiguity is inherent to this type of open-ended definition, which necessarily renders it susceptible to more than one reasonable interpretation. The term "state agency" may reasonably incorporate the legislature and its bicameral bodies, but it equally may not.

The lead opinion cites the canon expressio unius est exclusio alterius to argue that because the PDA expressly lists various types of governmental entities subject to the PDA, it intends all others of the same class—namely, the legislature and its bicameral bodies and other offices—to be exempted. Lead opinion at 14. But, as stated above, the use of the word "includes" and the catchall phrase "or other state agency" signals that the people intended this list to be nonexhaustive. *Cf. State v. Delgado*, 148 Wn.2d 723, 726-29, 63 P.3d 792 (2003) (concluding a particular statutory list with limiting language was exclusive). Moreover, based on the definition's syntax, the use of the coordinating conjunction "or" suggests the nonexhaustive list of governmental entities is disjunctive. *See, e.g., Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 319-20, 190 P.3d 28 (2008)

(plurality opinion) (concluding the use of "or" in a particular statutory definition was disjunctive). Thus, a particular state agency could be one of the types of governmental entities listed, but it could also be some "other state agency" not listed. The lead opinion's reliance on the expressio unius canon is misplaced. *See, e.g., In re Det. of Lewis*, 163 Wn.2d 188, 196-97, 177 P.3d 708 (2008) (holding that the defendant's reliance on the expressio unius canon was misplaced).

More helpful is the voters' pamphlet for Initiative 276, explaining the PDA's expansive disclosure requirements:

> "The initiative would require all . . . 'public record[s]' of both state and local agencies to be made available for public inspection and copying by any person asking to see or copy a particular record . . ." Further, the statement expressly provided that the law "makes all public records and documents in state and local agencies available for public inspection and copying" except those exempted to protect individual privacy and to safeguard essential governmental functions.

*Hearst*, 90 Wn.2d at 128 (alterations in original) (quoting *State of Washington Voters Pamphlet, General Election* 10, 108 (Nov. 7, 1972). But even this statement does not directly answer whether the people intended the legislature, and its bicameral bodies and other offices, to be included in the definition of "state agency."

We should therefore consider the policy pronouncements provided in the initiative to help clarify the voters' intent. The people described the public policy underlying the PDA several times as intending to reach all levels of government.

LAWS OF 1973, ch. 1, § 1(2), (5), (6), (11). "If the people intended to exempt an entire branch of government from the reach of the PRA, it would seem that a clear statement of such intent would be in order." *Koenig*, 167 Wn.2d at 349 (Korsmo, J. Pro Tem., concurring). But the people made no such statement.

It appears the people thought it wiser to proceed with care: to be general rather than specific, universal rather than particular. Specificity and particularity would cut the heart from their broad mandate of assuring "full access to information concerning the conduct of government *on every level.*" LAWS OF 1973, ch. 1, § 1(11) (emphasis added). Given the people's instruction that the PDA "shall be liberally construed," there is only one tenable conclusion we may reach: the PDA as originally enacted intended to apply to the legislature, including the house and the senate, as well as to individual legislators and their respective offices.

C. Relevant Legislative Amendments

Starting with the original intent of the PDA, we must evaluate whether the legislature subsequently narrowed the people's broad mandate for open government through a series of amendments.

In 1977, the legislature amended the definition of "agency" to remove the words "public official." LAWS OF 1977, ch. 313, § 1(1). This amendment plainly removed individual legislators from the definition of "state agency," and thus,

individual legislators were no longer "agencies" subject to the general requirements of the PDA.

In 1995, the legislature amended other relevant parts of the PDA. LAWS OF 1995, ch. 397. The legislature did not amend the definition of "state agency," but did create a definition for the term "state office," a term in that broader definition. "'State office' means *state legislative office* or the office of governor, lieutenant governor, secretary of state, attorney general, commissioner of public lands, insurance commissioner, superintendent of public instruction, state auditor, or state treasurer." LAWS OF 1995, ch. 397, § 1(39) (emphasis added). The legislature also created a definition for the term "state legislative office" in the definition of "state office." "'State legislative office'" means *the office of a member of the state house of representatives or the office of a member of the state senate.*" *Id.* § 1(38) (emphasis added). The amendment thus resolved any ambiguity about the people's intent for individual legislators' offices, i.e., offices of members of the house and the senate, to be subject to the requirements of the PDA.

The legislature also added a sentence to the definition of "public record":

> "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics. *For the office of the secretary of the senate and the office of the chief clerk of the house of representatives, public records means legislative records as defined in RCW*

> *40.14.100 and also means the following: All budget and financial records;*
> *personnel leave, travel, and payroll records; records of legislative sessions;*
> *reports submitted to the legislature; and any other record designated a*
> *public record by any official action of the senate or the house of*
> *representatives.*

*Id.* § 1(36) (emphasis added). Here, the legislature incorporated by reference the

definition of legislative records in RCW 40.14.100, which differs from the definition

of public records in the general provisions of the PDA. And the legislature

determined that the secretary and the chief clerk[2] were responsible for preservation

of only seven classes of legislative records. *Id.*; RCW 40.14.100.

All other classes of public records in the legislature's possession are still

plainly subject to the general definition. Adding the sentence delegating

responsibility to the secretary and the chief clerk for preservation of certain classes

of *legislative* records in no way worked to narrow the general responsibility of

agencies subject to the general public records requirements of the PDA. The

amendment begins with the phrase "For the office of" the secretary and the chief

clerk; this functions only to specify the duties of those state offices, not the duties of

other legislative "agencies." It must be understood in connection with RCW

40.14.100, which provides that the secretary and the chief clerk are not obligated to

---

[2] The secretary and the chief clerk are positions authorized by the Washington State Constitution. CONST. art. II, § 10.

preserve "reports or correspondence made or received by or in any way under the personal control of the individual members of the legislature." But such "reports or correspondence" "containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state . . . agency" are nonetheless clearly "writings" and thus "public records." RCW 40.14.100; LAWS OF 1995, ch. 397, § 1(36), (42). As a result, under the amendment, the responsibility for those types of "public records" falls to the "agency" in control of the records—that is, the particular office of a member of the house or senate, or the particular body or other office of the legislature. If the legislature, including its bicameral bodies and other offices, had intended to exempt itself in its institutional capacity from responsibility for all other classes of public records except for legislative records, it did not say so. All it said was that the secretary and the chief clerk were now responsible for the preservation of certain classes of *legislative* records.

In 2005, the legislature observed "that chapter 42.17 RCW [the PDA] contains laws relating to several discrete subjects." LAWS OF 2005, ch. 274, § 1. It therefore amended the PDA and recodified part of it as the PRA, ch. 42.56 RCW. *Id.* §§ 102, 103. Importantly, all the definitions in former RCW 42.17.020 (2005) still apply

throughout the freshly recast PRA. *Id.* § 101. Accordingly, the PRA's recodification

in its own chapter did not affect the definitions at issue.

In 2007, the legislature amended the PRA to make minor adjustments and add

a discrete definitions section. LAWS OF 2007, ch. 197, § 1(1)-(3). The new

definitions sections comprised only three definitions and contained no cross-

reference to its former definitions section. *Id.* It defined the terms "agency," "public

record," and "writing." *Id.* The language of the definitions remained unchanged

from their prior form in former RCW 42.17.020. *See id.*; *cf.* former RCW

42.17.020(2), (41), (48) (2005). Yet although the term "state office" remained in the

definition of "state agency," it was no longer defined. And therefore the new

definitions section in the PRA no longer contained a definition for "state office" and,

consequently, for "state legislative office."

In 2010, the legislature again amended chapter 42.17 RCW. The amendment

specifically addressed campaign contribution and disclosure laws. It added a new

chapter, ch. 42.17A RCW; created new sections; and repealed and recodified many

statutes. LAWS OF 2010, ch. 204. It also added a definition for the term "person in

interest" to the PRA. *Id.* § 1005.

It is with this backdrop in mind that we now turn to the current version of the

PRA at issue.

D.  Current Statute

The PRA requires each "agency" to make all "public records" available for public inspection and copying unless the record falls within a specific exemption. RCW 42.56.070(1).

The PRA defines the terms "agency" and "public records." RCW 42.56.010(1), (3). "The definitions of 'agency' and 'public record' are each comprehensive on their own and, when taken together, mean the PRA subjects 'virtually any record related to the conduct of government' to public disclosure." *Nissen v. Pierce County*, 183 Wn.2d 863, 874, 357 P.3d 45 (2015) (quoting *O'Neill v. City of Shoreline,* 170 Wn.2d 138, 146-47, 240 P.3d 1149 (2010)). "This broad construction is deliberate and meant to give the public access to information about every aspect of state and local government." *Id.* at 874. Thus, "[i]f these definitions are satisfied, then the act applies absent a specific exemption." *Nast*, 107 Wn.2d at 311 (Durham, J., dissenting); *see also Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 438, 327 P.3d 600 (2013) (figure illustrating whether disclosure under the PRA is required).

As discussed above, the term "agency" remains unchanged since 1972 and "includes *all state agencies* and all local agencies." RCW 42.56.010(1) (emphasis

added). And "'[s]tate agency' includes every state office, department, division, bureau, board, commission, or other state agency." *Id.*

I agree with the lead opinion's analysis about individual legislators' offices. The 2007 legislative amendments did not work to break the definitional chain, and individual legislators' offices are "agencies" subject to the PRA's broad public records disclosure mandate. Lead opinion at 13. But I disagree that the legislature, including its bicameral bodies and other offices, are not "agencies" subject to the PRA.

The lead opinion places heavy emphasis on the fact that the legislature and its bicameral bodies are not specifically listed in the PRA's broad definition of "state agency." *Id.* at 14. The lead opinion argues that the "legislature knew how to include its institutional bodies in a statutory definition of 'agency' and chose not to do so in the PRA or the CDC [campaign disclosure and contribution law]." *Id.* at 15. Yet the lead opinion loses sight of the fact that this was an initiative originally drafted by the people. And we must interpret the PRA as the "'average informed lay voter'" would. *Am. Legion*, 164 Wn.2d at 585 (quoting *Brown*, 139 Wn.2d at 28). The failure of the electorate to name the legislature explicitly in its broad, nonexhaustive list of governmental entities is not dispositive. The failure of the legislature to subsequently exempt itself from the broad, nonexhaustive list is more telling. In

point of fact, the legislature has tried to exempt itself, but failed.[3]   The two

definitions at issue, "agency" and "state agency," remain almost entirely unchanged

except for the deletion of the term "public official."   Thus, in keeping with the

original intent of the electorate, I would hold that the legislature and its bicameral

bodies and other offices are "agencies" subject to the PRA.

Our case law supports that the definition of "state agency" is not cabined by

the classes of entities listed in its definition.   For example, we have held a

nongovernmental, private entity may be subject to the PRA if it is found to be the

"functional equivalent" of a public "agency."   *Fortgang*, 187 Wn.2d at 512-13

(adopting the four-factor *Telford*[4] balancing test).[5]

---

[3] Most recently, the legislature passed Engrossed Senate Bill 6617, 65th Leg., Reg. Sess. (Wash. 2018), which explicitly exempted itself from the PRA.   At the subsequent urging of many legislators, the governor vetoed the bill, and the veto was not overcome. While I am aware that "legislative intent cannot be gleaned from the failure to enact a measure," *e.g.*, *State v. Conte*, 159 Wn.2d 797, 813, 154 P.3d 194 (2007), this most recent experience serves only to highlight that the legislature has not explicitly exempted itself from the PRA. *See* RCW 42.56.070, .230-.470, .600-.610.

[4] *Telford v. Thurston County Bd. of Comm'rs*, 95 Wn. App. 149, 161-63, 974 P.2d 886 (1999).

[5] "The *Telford* test—which derives from case law interpreting the federal Freedom of Information Act (FOIA)—furthers the PRA's purposes by preventing governments from evading public oversight through creative contracting." *Fortgang*, 187 Wn.2d at 513 (footnote omitted) (citing 5 U.S.C. § 552).   The PRA "closely parallels" FOIA, and sometimes judicial interpretations of FOIA help us construe the PRA. *Hearst*, 90 Wn.2d at 128.   But Congress is not an "agency" under FOIA and is specifically exempted.   5 U.S.C. §§ 551(1)(A), 552(f).   Congressional records thus are not subject to FOIA's disclosure requirements. *See id.*   Our legislature, conversely, has not explicitly exempted itself from the PRA like its federal counterpart.

"Under the *Telford* test, the factors relevant to deciding when a private entity is treated as the functional equivalent of an agency are (1) whether the entity performs a government function, (2) the extent to which the government funds the entity's activities, (3) the extent of government involvement in the entity's activities, and (4) whether the entity was created by the government." *Id.* at 517-18.

Generally, a nongovernmental, private entity would not fit in one of the listed categories of "state agency," such as "state office, department, division, bureau, board, [or] commission." RCW 42.56.010(1). But such entities could fit in the "other state agency" category. *See, e.g., Clarke v. Tri-Cities Animal Care & Control Shelter*, 144 Wn. App. 185, 191, 195, 181 P.3d 881 (2008) (concluding that the Tri-Cities Animal Care and Control Shelter—a privately run corporation that contracted with the regional animal control authority to provide animal control services—was the functional equivalent of a public "agency" subject to the PDA). Still, it would be absurd to conclude that a nongovernmental, private entity can be subject to the PRA but the legislature cannot simply because it is not listed in the open-ended definition of "state agency." Our constitution vests the legislature, consisting of the house and the senate, with the authority to make laws and fund the government; to hold the legislature is not, at least, the functional equivalent of a "state agency"

would be absurd. *See Resident Action Council*, 177 Wn.2d at 431 (noting we interpret the PRA to avoid absurd results).

The lead opinion concludes that by adding one sentence to the definition of public records, which specifies only that the secretary and the chief clerk are responsible for certain classes of legislative records, the legislature dramatically narrowed the scope of general public records requirements and relieved itself of further obligations under the PRA. Lead opinion at 16. I disagree.

To begin with, the secretary and the chief clerk do not possess *all* of the legislature's public records. Instead, they possess only the legislative records members of the legislature's various committees and subcommittees provide:

> The legislative committee chair, subcommittee chair, committee member, or employed personnel of the state legislature having possession of legislative records that are not required for the regular performance of official duties shall, within ten days after the adjournment sine die of a regular or special session, deliver all such legislative records to the clerk of the house or the secretary of the senate.

RCW 40.14.130. In addition, the secretary and the chief clerk depend on the legislature to "deliver" those legislative records to their respective offices:

> The chair, member, or employee of a legislative interim committee responsible for maintaining the legislative records of that committee shall, on a scheduled basis agreed upon by the chair, member, or employee of the legislative interim committee, deliver to the clerk or secretary all legislative records in his or her possession.

*Id.* The statute governing the preservation and destruction of public records defines

legislative records:

> "[L]egislative records" shall be defined as correspondence, amendments, reports, and minutes of meetings made by or submitted to legislative committees or subcommittees and transcripts or other records of hearings or supplementary written testimony or data thereof filed with committees or subcommittees in connection with the exercise of legislative or investigatory functions, *but does not include* the records of an official act of the legislature kept by the secretary of state, bills and their copies, published materials, digests, or multi-copied matter which are routinely retained and otherwise available at the state library or in a public repository, *or reports or correspondence made or received by or in any way under the personal control of the individual members of the legislature.*

RCW 40.14.100 (emphasis added). Thus, the secretary and the chief clerk are

currently responsible for compiling and preserving a much narrower subset of public

records—legislative records—than the PRA's broad disclosure requirements

encompass. Presumably, the legislature could possess public records related to

matters of substantial public interest, but those records will never be delivered to the

secretary and the chief clerk. If we accept the lead opinion's conclusion that the

legislature is not subject to the PRA and, instead, the PRA's requirements pertain

only to the secretary and the chief clerk, then we must accept that the people may

not obtain a host of public records not otherwise specified in the limited class of

legislative records for which the secretary and the chief clerk are responsible. Such

a reading would defeat the clear purpose and intent of the people in enacting the PRA.

The PRA specifically addresses the secretary and the chief clerk in its definition of "public records" and states that, when it comes to these specific state offices, "public records" are "legislative records." RCW 42.56.010(3). However, there are other legislatively created records, like the ones requested by the Associated Press in response to incidents of alleged sexual harassment and misconduct, that fall outside the definition of "legislative records" but must still be recognized as "public records." *Cf.* RCW 40.14.100; RCW 42.56.010(3). Under the lead opinion's holding that the secretary and the chief clerk are the only "agencies" of the legislature subject to the PRA, the documents requested by the Associated Press concerning allegations of sexual harassment and misconduct will be consumed by the very "black hole" the PRA meant to avoid. *Cf. Fortgang*, 187 Wn.2d at 520 (observing that the *Telford* test was designed to prevent the government from contracting with a private entity to evade PRA accountability). The lead opinion says "the specter of a 'black hole' of legislative public records is overblown," lead opinion at 17, yet it looms large.

The lead opinion also argues "the fact that the public cannot obtain all possible records is not unique to legislative entities but is, instead, a reality inherent to the

PRA," and cites several categories of records that are exempt from production under

the PRA. *Id.* at 17-18. But the legislature has not exempted itself from the PRA.[6]

All it has done is assign the secretary and the chief clerk duties related to a narrower

subset of public records: legislative records. There is nothing in the PRA supporting

the notion that the legislature intended to exempt itself. *Cf.* 5 U.S.C. § 551(1)(A)

(Congress explicitly exempting itself from FOIA's definition of "agency"). Absent

---

[6] There is no exemption that specifically applies to public records in the possession of the legislature or its bicameral bodies or other offices. "The PRA contains numerous exemptions that protect certain information or records from disclosure, and the PRA also incorporates any 'other statute' that prohibits disclosure of information or records." *Resident Action Council*, 177 Wn.2d at 432. "The PRA's exemptions are provided solely to protect relevant privacy rights or vital governmental interests that sometimes outweigh the PRA's broad policy in favor of disclosing public records." *Id. See generally* RCW 42.56.230 (personal information exemptions), .235 (religious affiliation exemptions), .240 (investigative, law enforcement, and crime victim information exemptions), .250 (employment and licensing information exemptions), .270 (financial, commercial, and proprietary information exemptions), .280 (preliminary drafts, notes, recommendations, and intra-agency memorandum exemptions), .290 (agency party to controversy exemptions), .300 (archeological site exemptions), .310 (library records exemptions), .320 (education information exemptions), .330 (public utilities and transportation exemptions), .335 (public utility districts and municipality owned electrical utilities exemptions), .350 (health professional exemptions), .355 (interstate medical licensure compact exemptions), .360 (health care exemptions), .370 (client records of domestic violence programs, or community sexual assault programs or services for underserved populations exemptions), .380 (agricultural and livestock exemptions), .390 (emergency or transitional housing exemptions), .403 (property and casualty insurance statement of actuarial opinion exemptions), .410 (employment security department records exemptions), .420 (security exemptions), .430 (fish and wildlife exemptions), .450 (check cashers and sellers licensing applications exemptions), .460 (fireworks exemptions), .470 (correctional workers exemptions), .600 (privileged mediation communications exemptions), .610 (certain information from dairies and feedlots limited).

a specific exemption, the PRA applies if the definitions of "agency" and "public record" are met. *Nast*, 107 Wn.2d at 311 (Durham, J., dissenting).

The lead opinion misinterprets the statute delegating responsibility to the secretary and the chief clerk in administering the preservation of certain classes of legislative records. The secretary and the chief clerk's statutory responsibilities related to legislative records do not affect the legislature's other responsibilities under the PRA. And the statutory scheme leaves the secretary and the chief clerk powerless to address the people's mandate for open government on issues outside their archival duties specifically related to the legislative process—for example, potential public records related to reported incidents of alleged sexual harassment and misconduct. I would hold the secretary and the chief clerk's responsibilities under the PRA are currently limited to the administration of legislative records, and the legislature, as an "agency," is still obliged to provide all other documents that meet the definition of "public records" under the PRA.[7]

---

[7] That said, the legislature may delegate its record keeping duties to the secretary and the chief clerk or some other agency: "A state or local agency's public records officer may appoint an employee or official of another agency as its public records officer." RCW 42.56.580(1).

## CONCLUSION

"'A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both.'" *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (quoting Letter to W.T. Barry (Aug. 4, 1822), *in* 9 THE WRITINGS OF JAMES MADISON: 1819-1836, at 103 (Gaillard Hunt ed., 1910)). Because I believe the legislature is a state agency subject to the PRA, and the statute delegating responsibility to the secretary and the chief clerk in administering the preservation of certain classes of legislative records is narrow, I cannot accept the lead opinion's conclusion that the legislature, including its bicameral bodies and other offices, are not subject to the broad mandate for open government. Instead, I would hold that the legislature as an institution, just like individual legislative offices, is subject to the PRA and must comply with its provisions requiring disclosure of nonexempt public records.

No. 95441-1

GORDON McCLOUD, J. (concurring in part/dissenting in part)—Did the

legislature subject itself to the broad disclosure requirements that the Public

Records Act (PRA), ch. 42.56 RCW, imposes on "agencies," or did the legislature

narrow those disclosure requirements for itself? The clear language of the law that

the people passed, but that the legislature later amended, shows that the legislature

chose narrower disclosure requirements for itself than for PRA-defined "agencies."

The lead opinion agrees that the legislature chose narrow disclosure requirements

for itself as a body but holds that it chose broader disclosure requirements for its

individual members. I therefore respectfully concur in part and dissent in part.

1. *The Text of the Applicable Statutory Definition Makes Clear That an Individual Legislator Is Not an "Agency"*

The PRA requires every "agency" to "make available for public inspection

and copying all public records." RCW 42.56.070(1). I agree with the lead opinion

that the legislature is not such an "agency." It is the legislative branch of

1

government, and it is subject to the more limited disclosure requirements that the PRA places on that branch.

But I disagree with the lead opinion's conclusion that individual legislators constitute "agencies" that are subject to the broader disclosure requirements of other parts of the PRA. The lead opinion's conclusion on that point is based on a definition of "agency" in a separate statute in a different chapter of the code. As discussed in Part 2, below, that definition didn't get into that separate statute and separate chapter by accident; the legislature intentionally severed that definition from the PRA, then voted down an amendment that would have maintained a cross-reference to the once-conjoined and now-severed statute that the lead opinion claims is still context for the PRA.

I would start with the plain language of the PRA instead. Under the PRA definition, "'[a]gency' includes all state agencies" and "'[s]tate agency' includes every *state office*, department, division, bureau, board, commission, or other state agency."[1] RCW 42.56.010(1) (emphasis added). The lead opinion interprets "state office," the broadest of these terms, to include individual legislators. In fact, the

---

[1] "Agency" also includes "all local agencies." RCW 42.56.010(1). There is no contention in this case that individual legislators are "local agencies."

2

lead opinion assumes that individual legislators are "government entit[ies]" that could be subject to the PRA because they have offices. Lead opinion at 10. But an individual legislator does not become a "state office" simply because the legislator has an office as a work space or because the legislator has a legislative aide. That logic would make countless individual state employees their own "agencies" separate and apart from the state agencies that employ them.

Instead, to determine the meaning of "state office"—and whether it includes an individual legislator—we should stick to the statute's text and consider the term in relation to its neighboring terms: "department, division, bureau, board, commission," and "other state agency."[2] RCW 42.56.010(1). These terms all refer to entities that have the power to act on behalf of the state—or a local government entity—by setting policy or transacting business. This context shows that an "agency" is a public entity (or a private entity acting in a public role, *see Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 512-13, 387 P.3d 690 (2017)) that has the power to transact business or take action on behalf of the government. An

---

[2] *See State v. Gonzales Flores*, 164 Wn.2d 1, 12, 186 P.3d 1038 (2008) ("[A] single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words." (citing *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005); *State v. Van Woerden*, 93 Wn. App. 110, 117, 967 P.2d 14 (1998))).

individual legislator has no such power.[3] Thus, under the PRA's definition of

"agency," an individual legislator is not a "state office" and, by extension, not an

"agency."

This reading is bolstered by the fact that the PRA clearly differentiates

between "agencies," on the one hand, and the legislature, or legislators, on the

other, by imposing specific, more limited disclosure obligations on the legislature's

records custodians, the secretary of the senate and the chief clerk of the house of

representatives.[4]

---

[3] "The legislative authority of the state of Washington shall be vested *in the legislature*, consisting of a senate and house of representatives." WASH. CONST. art. II, § 1 (emphasis added). To the extent that individual or smaller groups of legislators are permitted to act on behalf of either chamber, it is only because that chamber, as a body, has delegated its legislative authority to the individual or smaller group. *See* PERMANENT RULES OF THE SENATE, r.5, 66th Leg. (Wash. 2019-20), http://leg.wa.gov/senate/Administration/Pages/senate_rules.aspx#rule5 (S.R. 8601) (delegating the senate's legislative authority); PERMANENT RULES OF THE HOUSE OF REPRESENTATIVES, r.6, 66th Leg. (Wash. 2019-20), http://lawfiles.ext.leg.wa.gov/biennium/2019-20/Pdf/Bills/House%20Resolutions/4607-Permanent%20rules%20of%20House.pdf (H.R. 4607) (delegating the house's legislative authority). Indeed, individual legislators do not employ staff—their administrative officers employ the staff under an express delegation of authority by each chamber. *See* S.R. 8601, r.3; H.R. 4607, r.5 (delegating authority over employees of each chamber to the secretary of the senate and the chief clerk of the house of representatives, respectively).

[4] Specifically, the PRA repeatedly differentiates between the duties of the secretary and the chief clerk, on the one hand, and the duties of "agencies," on the other. *See, e.g.*, RCW 42.56.010, .090, .100, .520, .550, .560. The PRA's imposition of unique, more limited duties on the secretary and the chief clerk shows that the legislative bodies, although not agencies, are subject to the PRA in some fashion. But it is a limited fashion.

2. *The Lead Opinion's Conclusion That Legislators Are "Agencies" Is
Based on a Different Unconnected Statute, Whose Definitions Are Not
Part of the PRA—In Fact, They Were Explicitly Deleted from the PRA*

The lead opinion concludes that legislators are "agencies," largely by relying

on a historically "closely related" statute that the legislature has since taken steps

to divorce from the PRA. There is no rule of statutory interpretation that supports

this result.

Specifically, rather than look to other provisions of the PRA for context, the

lead opinion relies on the definitions section of the Fair Campaign Practices Act

(FCPA), ch. 42.17A RCW.[5] But nothing in the text of the PRA suggests that its

provisions should be read in light of the FCPA. In fact, the legislature suggested

just the opposite when it found that the PRA and FCPA cover "discrete subjects"

and created the PRA as its own freestanding enactment. RCW 42.56.001.

To be sure, the lead opinion is correct that the FCPA and PRA were joined

at the hip for 35 years. Lead opinion at 7. But not anymore. This means there are

---

The lead opinion is therefore correct that "exempting [the senate and the house of
representatives] from any public records disclosure duties whatsoever would be [an]
absurd" way to read the PRA, lead opinion at 16, and with its further conclusion that
those disclosure duties are limited.

[5] The lead opinion refers to this statute as the "campaign disclosure and
contribution law." Lead opinion at 7.

5

two problems with the lead opinion's decision to rely on that history to justify using the FCPA to interpret the PRA now.

The first problem is that the lead opinion is resorting to legislative history to augment the plain language of the PRA, when the PRA is not ambiguous about its own definition of "agency." That is not how we interpret statutes—if the statute's text is not ambiguous, we do not resort to legislative history. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018).

The second problem is that, although the lead opinion accurately summarizes the intertwined history of the PRA and the FCPA and their previously shared definition of "state office," it draws the wrong conclusion from that history; actually, the legislature's decision to separate those statutes must be interpreted as a legislative intention to separate those statutes.

Here's how it happened. In 2005, the legislature separated the FCPA and the PRA into their own chapters. LAWS OF 2005, ch. 274, §§ 101-103. The definitions section of the newly minted PRA still cross-referenced the FCPA's definitions, including the FCPA's definitions of "agency" and "state office." If we were interpreting the 2005 PRA today, with its cross-reference to FCPA definitions, I would join the lead opinion.

6

But in 2007, the legislature supplied the PRA with its own definitions

section and removed the cross-reference to the FCPA entirely. LAWS OF 2007, ch.

197, § 1. Those 2007 amendments had an effect. They imported the FCPA's

definition of "agency" into the PRA word for word. But they left behind other

definitions, including the definition of "state office." We have to presume that the

legislature intended to change the law by passing this amendment. *Jane Roe v.*

*TeleTech Customer Care Mgmt. (Colo.) LLC*, 171 Wn.2d 736, 751, 257 P.3d 586

(2011) ("A new legislative enactment is presumed to be an amendment that

changes a law rather than a clarification of the existing law.").

The lead opinion adopts the opposite presumption. It presumes that the

legislature intended for its enactment to have no practical effect and for the PRA to

continue looking to the FCPA to define its terms.[6] But that is not the interpretive

principle the court uses. *Id.*

And the legislature knows that. Since the time that it severed the PRA from

the FCPA, it has added new, express cross-references between them. For example,

---

[6] The lead opinion concludes that "[w]ithout more—such as notice to the electorate that legislators were attempting to exempt themselves from the PRA—neither amendment was sufficient to accomplish that feat." Lead opinion at 11. The lead opinion does not suggest what additional notice would be required beyond the ordinary, publicly accessible legislative process. The legislature's amendment of a statute changes the statute—whether it makes headlines or not.

in 2010, the FCPA defined "public record" to have "the definition in RCW 42.56.010." RCW 42.17A.005(43); LAWS OF 2010, ch. 204, § 101. So the legislature obviously knows how to cross-reference when it means to. But it did not enact such a similar cross-reference from the PRA to the FCPA for "state office." The lead opinion's decision to read such a cross-reference into the PRA anyway flouts basic rules of statutory interpretation.

### 3. The Proper Context—Other Portions of the PRA—Supports the Conclusion That an Individual Legislator Does Not Constitute an "Agency"

The FCPA definition of "state office" is not context for the PRA. Instead, the context for a portion of the PRA is the rest of the PRA.

That context shows that the PRA distinguishes an "official"—like a legislator—from an "agency." For example, RCW 42.56.060 protects every "public agency, public official, public employee, [and] custodian" from liability if that individual "acted in good faith in attempting to comply with the provisions of" the PRA. Legislators are certainly "public official[s]," one of the categories listed, which suggests that they are not also "agencies," a separate category listed. *See State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) ("Another fundamental rule of statutory construction is that the legislature is deemed to intend a different meaning when it uses different terms." (citing *State v. Beaver*,

148 Wn.2d 338, 343, 60 P.3d 586 (2002); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 160, 3 P.3d 741 (2000)).

In addition, the PRA limits the legislature's disclosure obligations by repeatedly distinguishing legislative records custodians from "agencies." For example, RCW 42.56.100 requires "agencies" to "adopt and enforce reasonable rules and regulations . . . consonant with the intent of [the PRA] to provide full access to public records, to protect public records from damage or disorganization, and to prevent excessive interference with other essential functions of the agency." The legislature has a lighter burden, however. The legislative records custodians must "adopt reasonable procedures" to effectuate the same aims of access, preservation, and efficiency, but they may do so "allowing for the time, resource, and personnel constraints associated with legislative sessions." *Id.* If individual legislators were "agencies," this accommodation would impose full PRA obligations on individual legislators, while simultaneously relaxing obligations on those same legislators' appointed records custodians, despite the expressed intent to accommodate those legislators' "time, resource[s], and personnel constraints." *Id.* Such a contradictory interpretation would be absurd, and hence, it is disfavored. *See Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007) ("A reading that produces absurd results must be avoided.").

Further, the PRA as a whole limits outside scrutiny of the legislative branch. For example, the PRA permits records requesters to haul the secretary and the chief clerk into court under some PRA provisions, but not others. RCW 42.56.550 permits records requesters to sue an "agency" when it (1) "denie[s] an opportunity to inspect or copy a public record" or (2) "has not made a reasonable estimate of the time that the agency requires to respond to a public record request or a reasonable estimate of the charges to produce copies of public records." And RCW 42.56.560 applies the first of these claims to the secretary and the chief clerk. But not the second one. It lacks any provision for suits relating to unreasonable estimates. Accordingly, under the usual rules of statutory interpretation, the secretary and the chief clerk cannot be called into court, as "agencies" can be, for providing unreasonable estimates.[7] This intentional differentiation would be undermined by subjecting individual legislators, as "agencies," to the entirety of RCW 42.56.550.

Finally, the PRA narrows the definition of "public record" for the legislature. For "agencies," a "public record" is "*any* writing containing

---

[7] *See State v. Delgado*, 148 Wn.2d 723, 729, 63 P.3d 792 (2003) ("'Under *expressio unius est exclusio alterius*, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other.'" (quoting *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002))).

information relating to the conduct of government or the performance of any

governmental or proprietary function prepared, owned, used, or retained by any

state or local agency regardless of physical form or characteristics."

RCW 42.56.010(3) (emphasis added). But for the secretary and the chief clerk, a

"public record" is limited to certain administrative records, official reports, and the

records identified under cross-referenced RCW 40.14.100. *Id.* RCW 40.14.100

basically covers the records of the legislature's committees and subcommittees. It

explicitly excludes, however, "reports or correspondence made or received by or in

any way under the personal control of the individual members of the legislature."

RCW 40.14.100. Neighboring statute RCW 40.14.110 reinforces that exclusion by

giving individual legislators the option to donate their personal papers or,

conversely, keep them to themselves. Turning individual legislators into

"agencies" would frustrate this narrow definition that applies to the legislature,

making the entirety of legislators' writings "public records" subject to the PRA.

CONCLUSION

Text is "[t]he surest indication of legislative intent." *State v. Ervin*, 169

Wn.2d 815, 820, 239 P.3d 354 (2010). And when we say "text," we mean the text

of the statutory provision at issue in context of the statute in which it resides. *See*

*Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002)

11

(reading a statute "'in the context of the entire act' in which it appeared." (quoting

*In re Estate of Lyons*, 83 Wn.2d 105, 108, 515 P.2d 1293 (1973))).

The lead opinion departs from these rules and reaches its conclusion by

relying on a definition of "state office" from a separate statute, whose definitions

were intentionally excised from the PRA, and whose cross-reference was then also

deleted. We have never before approved of such an approach to statutory

interpretation. I would interpret the PRA's text and context in the usual manner,

recognize that legislators are not "agencies," and, accordingly, conclude that they

are subject to the PRA to the same extent as the legislature of which they form a

part. The lead opinion and I agree that the text of the PRA plainly limits the ways

in which the legislature is subject to the PRA.

I respectfully concur in part and dissent in part.

George McCloud, J.

González, J.